**SMILEY WANG-EKVALL, LLP**
Lei Lei Wang Ekvall, State Bar No. 163047
*lekvall@swelawfirm.com*
Robert S. Marticello, State Bar No. 244256
*rmarticello@swelawfirm.com*
Michael L. Simon, State Bar No. 300822
*msimon@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Proposed Counsel for Golden Hotel LLC and
Golden Capital Venture LLC, Debtors and
Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br>GOLDEN HOTEL LLC,<br>　　　　Debtor and<br>　　　　Debtor-in-Possession. | Case No. 8:20-bk-12636-SC<br><br>Chapter 11<br><br>(Jointly Administered with Case No. 8:20-bk-12637-SC) |
| In re<br>GOLDEN CAPITAL VENTURE LLC,<br>　　　　Debtor and<br>　　　　Debtor-in-Possession. | **DECLARATION OF HIEU MINH BUI IN SUPPORT OF:**<br><br>**(1) EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL AND TURNOVER OF ESTATE PROPERTY;** |
| ☐ Affects GOLDEN HOTEL LLC<br>☐ Affects GOLDEN CAPITAL VENTURE LLC<br>☒ Affects both Debtors | **(2) EMERGENCY MOTION FOR ORDER AUTHORIZING CONTINUED USE OF DEBTORS' PRE-EXISTING CASH MANAGEMENT SYSTEM;**<br><br>**(3) EMERGENCY MOTION FOR ODER AUTHORIZING (A) PAYMENT OF PRE-PETITION WAGES; AND (B) HONORING OF PRE-PETITION PAID TIME OFF; AND** |

2838093.1    DECLARATION

(4) **EMERGENCY MOTION FOR ORDER: (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE; (B) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE; AND (C) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT UNDER 11 U.S.C. § 366**

**Hearing Information:**
**DATE:** September 23, 2020
**TIME:** 2:00 p.m.
**CTRM:** 5C
 Ronald Reagan Federal Building
 411 West Fourth Street
 Santa Ana, CA 92701

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2838093.1

2

EMERGENCY MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

## **DECLARATION OF HIEU MINH BUI**

I, Hieu Minh Bui, declare as follows:

1. I am the manager for both Golden Capital Venture, LLC and Golden Hotel, LLC, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"). I personally oversee the operations of the Radisson Suites Hotel Anaheim-Buena Park located at 7762 Beach Blvd., Buena Park, California. As a result, I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the following: (1) the *Emergency Motion for Order Authorizing Use of Cash Collateral and Turnover of Property* (the "Cash Collateral Motion"); (2) the *Emergency Motion for Order Authorizing Continued Use of Debtors' Pre-Existing Cash Management System* (the "Cash Management Motion"); (3) the *Emergency Motion for Order Authorizing (A) Payment of Pre-Petition Wages; and (B) Honoring of Pre-Petition Paid Time Off* (the "Payroll Motion"); *and (4) the Emergency Motion for Order: (A) Prohibiting Utility Providers From Altering, Refusing or Discontinuing Service; (B) Deeming Utilities Adequately Assured of Future Performance; and (C) Establishing Procedures for Determining Adequate Assurance of Payment Under 11 U.S.C. § 366* (the "Utility Motion"). Unless otherwise defined in this declaration, all terms defined in the Cash Collateral Motion are incorporated herein by this reference.

2. I am a part owner of Invobal Corporation ("Invobal"), a closely held corporation, who is the sole member of both Debtors.

3. The Debtors collectively own and operate the Radisson Hotel Anaheim-Buena Park, a 200-room hotel with a restaurant, ballroom, lounge, and an outdoor pool (the "Hotel"), located at 7762 Beach Boulevard, Buena Park, Orange County, California (the "Real Property"). Golden Capital Venture owns the Real Property and Golden Hotel operates the Hotel pursuant to a lease from Golden Capital Venture and a license from Radisson Hotels International, Inc.

4. The Hotel is approximately one block from Knott's Berry Farm and approximately six miles from Disneyland. Photographs of the Hotel and a map of the location of the Hotel are collectively attached to the Cash Collateral Motion as Exhibit "3."

5. Golden Hotel is a party to a License Agreement with Radisson Hotels International, Inc. The License Agreement requires the payment of a royalty, marketing fee, and reservation fee. The royalty is a percentage of daily "Gross Room Revenue" (as defined in the License Agreement) based on certain parameters set forth in the License Agreement. The marketing fee, reservation fee and other costs charged by Radisson are in addition to the royalty. Due to the pandemic, Radisson agreed to defer fees due under the License Agreement for March, April, and May, with such fees being invoiced in September and paid either in a lump sum or four equal monthly installments.

6. The Debtors obtained a loan in the principal amount of $17,550,000 (the "Loan") from Bank of America, N.A. ("BOA"). Attached to the Cash Collateral Motion as Exhibit "4" is a true and correct copy of a payoff demand statement received from Rialto Capital Advisors, LLC, the special servicer of the Loan. My understanding is that on November 6, 2015, BOA recorded a UCC Financing Statement against both Debtors and that the Loan is also secured by a deed of trust recorded against the Real Property on November 15, 2015 (the "Deed of Trust"). I understand that, in December 2015, BOA assigned the Deed of Trust and UCC Financing Statement to Wells Fargo, N.A., as trustee for Mortgage Stanley Capital Trust 2015-UBS8, Commercial Mortgage Pass-Through Certificates, Series 2015-UBS8. To my knowledge, other than Wells Fargo, not other entity asserts an interest in the revenues of Golden Hotel or Golden Capital Venture.

7. The Debtors are parties to a Cash Management Agreement with BOA. The Cash Management Agreement provides that all revenues from the Hotel are to be deposited in a lockbox account at Wells Fargo (subject to a Deposit Account Control Agreement) and, each day, Wells Fargo is to sweep the account by wiring funds to an account at BOA (the "Cash Management Account"). From the Cash Management Account, numerous amounts are to be deducted and the

remainder, if any, is to be paid to Golden Hotel for operating expenses. More specifically, the Cash Management Agreement provides for the following waterfall:

    a.    First, the funding of a tax escrow;

    b.    Second, the funding of an insurance escrow;

    c.    Third, the payment of principal on the Loan;

    d.    Fourth, the payment of interest on the Loan;

    e.    Fifth, the payment of bank account management fees;

    f.    Sixth, the payment of cash management fees;

    g.    Seventh, to fund the FF&E reserve ($70,675.00/mo.); and

    h.    Eight, to the Debtors for operating expenses.

8. In June 2019, Wells Fargo began requiring that all of Golden Hotel's revenues be paid to it be deducted in accordance with the waterfall outlined above. Attached to the Cash Collateral Motion collectively as Exhibit "5" are payment statements for September, October, November, and December 2019.

9. The Debtors have made substantial renovations to and improvements at the Hotel. The Hotel was first built in the early 1980's. Other than a surface-level renovation in 2006, the Hotel was not renovated prior to the purchase in 2015. The Debtors have been renovating the Hotel over a multi-year period starting in 2017. The renovation caused a decline in the Hotel's ballroom and room revenue due to the construction and the unavailability of a portion of the room nights each year. The shareholders and/or an affiliate paid the collective sum of approximately $4,000,000 to fund the renovations and to fund operations (due to the decline in revenues), including to make payments on the Loan and pay the other amounts listed above.

10. The amounts paid by shareholders and/or an affiliate for renovations or operations were booked as "loans" in the Debtors' internally prepared financial statements. However, they were not memorialized in loan documents and the amounts were not secured. The characterization of the payments as "loans" was an accounting entry to track and account for the amounts paid.

11. Each month $70,675.00 was paid from Golden Hotel's revenues to fund the FF&E Reserve. The FF&E Reserve was meant to fund the labor and materials to replace furniture, fixtures, and equipment or make other repairs or improvements, including related to the Product Improvement Plan ("PIP") of Radisson for the Hotel to meet Radisson's system standards. The Debtors would make the necessary repairs and improvements and then seek reimbursement from the FF&E Reserve. However, the Loan servicer was typically slow to respond to requests for reimbursement and, on multiple occasions, denied requests for reimbursement.

12. Historically, the Hotel was largely dependent on tourists visiting Knott's Berry Farm and Disneyland, both of which closed in mid-March 2020. Beginning in February 2020, guests and tour groups began cancelling reservations for March and thereafter. During the pandemic, the Hotel has been operating at approximately 10-20% capacity on average. The Hotel was required to furlough many of its employees and now employs a staff of about 15 individuals. Due to the decline in revenues caused by the pandemic, Golden Hotel could no longer keep the Hotel open while also complying with the cash management arrangement, which left no revenues for operations of the Hotel, and making debt service payments.

13. In January 2020, the Debtors were notified that the servicing responsibilities of the Loan were transferred to Rialto Capital Advisors, LLC ("Rialto"), as the special servicer. It is my understanding that Midland Loan Services, a division of PNC Bank ("Midland"), is or was the master servicer. In January 2020, Rialto requested that the Debtors and I sign a pre-negotiation agreement. The pre-negotiation agreement included a unilateral release by myself, individually, and the Debtors of any and all claims against Wells Fargo, Rialto, and Midland. Neither myself nor the Debtors signed the pre-negotiation agreement.

14. The Debtors received a letter from counsel for Wells Fargo and Rialto dated April 9, 2020, stating that it served as notice that a default occurred due to the failure to make the monthly payment due April 1, 2020. The Debtors received a letter from counsel for Wells Fargo and Rialto dated April 10, 2020 demanding to audit the Debtors' books and records. The Debtors received a letter from counsel for Wells Fargo and Rialto dated June 11, 2020 claiming a further

1 default due to amounts discussed above booked as "loans."  By correspondence dated July 7, 2020, Wells Fargo stated that it was exercising its right to accelerate the Loan.

15. On July 14, 2020, Wells Fargo filed a lawsuit for the appointment of a receiver.

16. On July 31, 2020, Wells Fargo also recorded a notice of non-judicial foreclosure sale.

17. On August 4, 2020, Wells Fargo requested the appointment of a receiver on an *ex parte* basis.  Wells Fargo's request for *ex parte* relief was denied and the matter was set for hearing on regular notice on September 21, 2020.

18. The Neighborhood Improvement Task Force team for the City of Buena Park (the "City") performed an inspection in April 2019 and cited Golden Capital Venture for a number of violations of the Buena Park Municipal Code.  This same inspection resulted in a misdemeanor complaint against Golden Capital Venture and myself.  The complaint was filed on August 7, 2019.  The City also requested a public hearing in October 2019 to discuss the modification or revocation of the permit to operate a hotel.  Following notification of the citations, the Debtors worked to resolve the specified issues and have resolved the majority of the issues.  Essential to the progress made by the Debtors was the hiring of a new general manager, Oscar Juat, for the Hotel.

19. The City has recognized that the Debtors have made substantial progress.  In connection with a subsequent inspection on December 4, 2019, the City identified that only a few items remained to be resolved, recognizing that other violations have been corrected.  An inspection was performed on August 13, 2020 to evaluate the Debtors' progress in remedying the citations.  Following that inspection, the City issued a notice stating that it "recognizes the progress Radisson has made on the original list of violations, and acknowledges that since the City's last inspection significant aesthetic improvements have been made; including renovation of many of the rooms."  This progress was, in part, funded by the shareholders and/or affiliate discussed above.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000  •  Fax 714 445-1002

2838093.1                              5                              DECLARATION

20. The Debtors filed their cases to maximize the value of the Real Property and Hotel, maintain the going concern value of the Hotel as an operating Radisson hotel, and preserve jobs. I believe there is significant equity in the Real Property and Hotel. The Debtors have received multiple written offers to purchase the Real Property and Hotel. The most recent purchase offer received by the Debtors was in July 2020, the oldest was dated in February 2019, and the majority of the offers were received within the last year. Of those offers, the lowest offer received was $20,000,000 and the highest offer was $25,000,000. The Debtors are still analyzing their restructuring alternatives. However, pre-petition, the Debtors retained brokers to both list the Real Property and Hotel for sale and to seek a loan to refinance the Loan. The Real Property and Hotel are currently listed for sale at $24 million.

21. I reviewed, and was involved in the preparation of, the budget attached to the Cash Collateral Motion as Exhibit "1" (the "Budget"). Golden Hotel had cash on hand of approximately $8,424.57 as of the Petition Date. Golden Hotel seeks to use cash collateral for a 4-week period to pay only those expenses necessary to operate the Hotel. I believe the Budget is reasonable based on Golden Hotel's actual recent pre-petition income and expenses and includes only those expenses necessary to operate the Hotel over the next 4-week period.

22. The proposed use of cash collateral is necessary to continue the operation of Golden Hotel's business and preserve its value as a going concern. Based on the offers to purchase the Real Property and Hotel, the value of the Real Property is as the site of an operating Radisson hotel. In contrast, without the use of cash collateral, Golden Hotel will be unable to meet payroll obligations and pay the daily costs and expenses of operating the Hotel, causing the Hotel to cease operations, which could result in a decline in the value of the Real Property and a significantly reduced recovery for all creditors.

23. Golden Hotel currently employs about 15 persons. The number of employees and the amount paid to each employ depends on the needs of Golden Hotel and the occupancy of the Hotel. Golden Hotel pays its payroll obligations on a bi-weekly basis. Payroll is due on

September 24, 2020 for work performed between September 3, 2020 and September 17, 2020.  As set forth in the Budget, the payroll due on September 24, 2020, is estimated to be $27,067.

24.     Attached the Payroll Motion as Exhibit "1" is a list of Golden Hotel's employees and the paid time off, including vacation and sick leave pay, they accrued within 180 days of the September 21, 2020 petition date, which Golden Hotel seeks to honor through this Motion.

25.     I believe there is a good business justification for paying Golden Hotel's pre-petition payroll obligation and honoring the prepetition accrued paid time off.  Doing so will minimize hardship to Golden Hotel's employees, provide stability to Golden Hotel, and decrease the risk of harm to the estate.  Without the payment of payroll, Golden Hotel may lose the personnel needed to continue to operate the Hotel and effectively serve its customers, causing the cessation of the Debtor's business to the detriment of all creditors.  I believe that pre-petition payroll amounts are relatively small in light of the importance and necessity of preserving the employees' services and morale.

26.     The employees to whom the Payroll Motion requests authority to pay and to whom the Payroll Motion requests authority to honor PTO for, are not insiders as defined by § 101(31) of the Bankruptcy Code.

27.     Credit card payments for hotel reservations are received in a merchant bank account at BOA, Account No. Ending 8888 (the "Merchant Account").  As required by Radisson, payments for reservations are processed pursuant to a Merchant Gateway Services Agreement between Golden Hotel and Merchant Link, LLC.  Each Golden Hotel and Golden Capital Venture have a checking account at BOA.  Golden Hotel's checking account is Account No. Ending 4068 (the "GH Account"), and Golden Capital Venture's checking account is Account No. Ending 1326 (the "GCV Account").  Payments received in the Merchant Account are automatically wired into the GH Account by BOA.  Pre-petition, Golden Hotel would make payments for hotel operating expenses from the GH Account.  I am in the process of closing the GH Account and the GCV Account and opening debtor-in-possession checking accounts for each entity.  Golden Hotel ("FBO Bank of America") also had a deposit account at Wells Fargo, Account No. Ending 2134,

1  which is the "Cash Management Account" under the Cash Management Agreement executed in
2  connection with the Loan.

3      28.    I believe there is good cause to authorize Golden Hotel's continued use of the
4  Merchant Account and the GH Account. Golden Hotel's payments are processed by Merchant
5  Link, as required by Radisson, and the payments are deposited in the Merchant Account. BOA
6  automatically wires receipts in the Merchant Account (after deducting fees) to the GH Account.
7  Continued use of the Merchant Account and the GH Account for an interim period ensures that
8  Golden Hotel's revenue stream is not interrupted and that it is able to timely pay the expenses
9  necessary to operate the Hotel. In contrast, the immediate closing of the Merchant Account and
10 GH Account could cause significant disruption to Golden Hotel's operations to the detriment of
11 creditors and investors.

12      29.    To the best of my knowledge and belief, attached to the Utility Motion as Exhibit
13 "1," is a true and correct schedule of the Debtors' utility providers, the services they provide, the
14 average estimated monthly payment for such services, and the deposits the utility providers are
15 currently holding on hand.

16 I declare under penalty of perjury under the laws of the United States of America that the
17 foregoing is true and correct.

18 Executed on this 22 day of September, 2020, at **FOUNTAIN VALLEY**, California.

HIEU MINH BUI

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **Declaration of Hieu Minh Bui in Support of: (1) Emergency Motion for Order Authorizing Use of Cash Collateral and Turnover of Estate Property; (2) Emergency Motion for Order Authorizing Continued Use of Debtors' Pre-Existing Cash Management System; (3) Emergency Motion for Order Authorizing (A) Payment of Pre-Petition Wages; and (B) Honoring of Pre-Petition Paid Time Off; and (4) Emergency Motion for Order: (A) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service; (B) Deeming Utilities Adequately Assured of Future Performance; and (C) Establishing Procedures for Determining Adequate Assurance of Payment Under 11 U.S.C. Section 366** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **09/22/2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Marcus Colabianchi    mcolabianchi@duanemorris.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Robert S Marticello    Rmarticello@swelawfirm.com, gcruz@swelawfirm.com;lgarrett@swelawfirm.com;jchung@swelawfirm.com
- Michael Simon    msimon@swelawfirm.com, lgarrett@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/22/2020 | Lynnette Garrett | */s/ Lynnette Garrett* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**